IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JOANN WEIDNER-KASHEIMER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. **09-054-CJP** |
| | ) | |
| **HAROLD NELSON and LANCE ADAMS,** | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM and ORDER</u>

**PROUD, Magistrate Judge:**

This matter is before the Court on defendants' Motion for Summary Judgment.  **(Doc. 47)**.  Plaintiff filed a response in opposition at **Doc. 54.**  With leave, defendants filed a reply at **Doc. 57.**

Plaintiff, who is white,  is a former employee of the Illinois State Police.  In 2007, while she was employed in another division, she applied for a position as an investigator in the Division of Internal Investigations (DII).  She was unsuccessful; John Merrifield, an African-American male, got the job.  Believing that she had been the victim of discrimination, she filed suit against two of her superior officers.

Ms. Weidner-Kasheimer brings two claims against defendants, both of which are brought pursuant to 42 U.S.C. §1983.  She claims that she was passed over in favor of a less-qualified black applicant because of her race, in violation of the Fourteenth Amendment equal protection clause and 42 U.S.C. §1981.  She also claims that her application was denied in retaliation for her exercise of her First Amendment rights by speaking before an Illinois Supreme Court committee in 2003.

1

This Court has jurisdiction pursuant to 28 U.S.C. §1331.  All parties consented to final disposition by a magistrate judge pursuant to 28 U.S.C. §636(c).  See, Docs. 22, 27 & 29.

**Standard for Summary Judgment**

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  ***Estate of Suskovich v. Anthem Health Plans of Virginia, Inc.***, 553 F.3d 559, 563 (7th Cir. 2009), *citing* **Fed. R. Civ. P. 56(c).** *Accord,* ***Breneisen v. Motorola, Inc.***, **512 F.3d 972 (7th Cir. Cir. 2008);** ***Levy v. Minnesota Life Ins. Co.***, **517 F.3d 519 (7th Cir. 2008).**

In ruling on a summary judgment motion, the Court construes all facts and reasonable inferences in the light most favorable to the non-moving party (here, plaintiff).  ***Lloyd v. Swifty Transp., Inc.***, **552 F.3d 594, 600 (7th Cir. 2009);** ***TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.***, **491 F.3d 625, 630 (7th Cir. 2007);** ***Reynolds v. Jamison***, **488 F.3d 756, 764 (7th Cir. 2007).**

In response to summary judgment, the non-movant cannot rest on his pleadings. Rather, the non-movant must provide evidence on which the jury or court could find in *his* favor. ***Maclin v. SBC Ameritech***, **520 F.3d 781, 786 (7th Cir. 2008).**

**Facts**

This overview of the facts is mostly taken from plaintiff's memorandum, Doc. 54, pp. 2-7.  Unfortunately, plaintiff's memorandum misstates the facts in several important respects. Where plaintiff's statement conflicts with the record, the Court will cite to the record.

Ms. Weidner-Kasheimer began working for the ISP in 1985, and became an investigator

in 1993.  She retired from the ISP in 2009.

Plaintiff transferred into the DII in 2001.  She received good performance reviews.  Her statement of facts says that, in 2003, she requested and received permission to testify, in her personal capacity, before an Illinois Supreme Court commission regarding grandparents' rights.[1]  However, the document she cites in support of this statement does not refer to testimony before the Illinois Supreme Court.  The document she cites to is an e-mail in which she states that she had been "accepted to the Grandparents Raising Grandchildren task force" of the Illinois Department of Aging, and that she intended to attend a task force meeting on March 4, 2003.  She was "requesting clarification on policy issues" concerning her participation.  Doc. 48, Ex.3, p. 29.  The Court has searched in vain for any exhibit which supports plaintiff's contention that she sought and received permission to testify before the Illinois Supreme Court.  This statement in her brief is contradicted by her own deposition, in which plaintiff testified that she did not inform her chain of command in advance that she would be speaking before the Supreme Court committee.  Doc. 54, Ex. 16, p. 2.

In any event, during her testimony before the Supreme Court committee, plaintiff did not

---

[1]The event at which plaintiff testified in 2003 is variously described in the parties' briefs as a Supreme Court hearing, a task force meeting, and a Supreme Court commission.  In an e-mail dated February 26, 2003, plaintiff referred to an Illinois Department of Aging task force on Grandparents Raising Grandchildren and notified her superiors that she would be attending a meeting of the task force in Peoria on March 4, 2003.  Doc. 54, Ex. 3, p. 29.  Later e-mails indicate that the "radio announcement" concerned testimony by plaintiff before the Illinois Supreme Court during a hearing "regarding child custody issues."  Ex. 3, p. 32.  In her deposition, plaintiff explained that her "testimony" consisted of an oral presentation which she made to a committee of judges from throughout the state.  This committee had been formed by the Illinois Supreme Court to "hear testimony from the public and from attorneys regarding child custody issues, juvenile court issues."  The hearing at which she testified was held in Springfield, Illinois.  See, Doc. 54, Ex. 15, p. 5.

identify herself as an employee of the ISP.  Her testimony was recorded and part of it was broadcast or referred to on the radio.  Defendant Lance Adams, who was then an Area Commander in plaintiff's chain of command, heard a reference to plaintiff's testimony on the radio.  Adams noted in her next evaluation that she had exercised poor judgment by testifying without first clearing the contents of her remarks with her superior officers.

Plaintiff transferred out of DII at her request in 2004.

In March, 2007, the ISP posted vacancy announcements for two DII investigator positions  in the Collinsville, Illinois, office.  Three candidates applied: John Merrifield, Pete Goodman,  and plaintiff.  A panel was formed to interview the candidates and make recommendations.  The members of the panel were Gerald Jenkins, Morrie Fraser and Terry Campbell  According to plaintiff, it was "clear" that Goodman would get one of the jobs because he was already working in an acting capacity as a DII investigator.  Plaintiff does not base her claims on the fact that Goodman got one of the jobs.

After the interviews, Campbell and Fraser told Jenkins that they favored plaintiff over Merrifield.  Jenkins replied that "Colonel Nelson won't be happy with that."  Jenkins then met with Colonel Nelson and informed him that Fraser and Campbell recommended Weidner-Kasheimer, but that Jenkins recommended Merrifield.  Colonel Nelson, who was the Deputy Director of DII, gave the job to Merrifield.

Plaintiff filed a complaint with the ISP Office of Equal Employment Opportunity. Jenkins gave a sworn statement as part of the EEO investigation of plaintiff's complaint. According to plaintiff's memorandum, Jenkins said in his statement that Nelson "expressed that the 'radio interview . . . . reflected negatively on her.'" Plaintiff's statement is misleading.  In

4

fact, Jenkins' sworn statement says, "Colonel Nelson previously had interactions with Special Agent Weidner-Kasheimer regarding her not being submitted for promotion and the radio interview, and her behavior at these interactions reflected negatively on her." Doc. 54, Ex. 2, pp. 10-11. Plaintiff's statement is also misleading in that she says that Jenkins said in his EEO statement that, during the meeting with Nelson, "their discussion took into consideration the issue of race." Jenkins' EEO statement is located at Doc. 54, Ex. 2, pp. 7-12. The description of the meeting with Nelson is at pages 10-11. Jenkins' statement did not say that he and Nelson talked about race during their meeting.

Nelson and Jenkins are African-American. Jenkins testified in his deposition that Merrifield's race was considered. When asked who considered it, he said, "Probably the interview panel up on through the chain of command, including myself, lieutenant colonels, et cetera. (Jenkins dep., p. 27.)" Doc. 54, p. 7.

Plaintiff's statement of the facts is misleading in another place. At Doc. 54, page 5, foot note 2, plaintiff quotes from a section of the ISP EEO report. She states the report concluded

> Race: All acknowledged discussing race during the selection process. While Special Agent Weidner-Kasheimer's race was not discussed, it was believed Sergeant Merrifield's race (African American) was beneficial, in that his selection would address a lack of diversity in the Southern Command of DII.

Although the above is an accurate quote from the ISP EEO report, it is rendered misleading by plaintiff's omission of the very next sentence, which states, "However, all indicated their decision was not based on race, but on the prior job performance and experience

5

of the candidates." Doc. 54, Ex. 2, p. 5. [2]

## Analysis

**1.**     **Constitutionality of Summary Judgment**

Plaintiff argues that granting summary judgment against her would violate her Seventh

Amendment right to a jury trial.  The Seventh Circuit Court of Appeals has repeatedly rejected

this argument.  **See, *Burks v. Wisconsin Department of Transportation*, 464 F.3d 744, 759 (7th**

**Cir. 2006), and cases cited therein**.  In a recent case, the Seventh Circuit called such an

argument "frivolous."  ***Legg v. Pappas*, 383 Fed. Appx. 547, \*2, n. 4 (7th Cir. 2010)**.   Being

bound by Seventh Circuit precedent, this Court must reject plaintiff's argument.

**2.**     **Lack of personal involvement by defendant Adams**

Defendant Lance Adams argues that he had no personal involvement in any employment

decision regarding plaintiff in 2007.  In order to be held liable for a constitutional violation

under 42 U.S.C. §1983, the defendant must have personally participated in the alleged violation.

***Duckworth v. Franzen*, 780 F.2d 645, 655-656 (7th Cir. 1985); *Musikiwamba v. ESSI, Inc.*,**

**760 F.2d 740, 754 (7th Cir. 1985)**.

After plaintiff left DII in 2004, Adams was not in a position to make employment

decision with respect to her.  Further, Adams left DII in 2006, before the events giving rise to

this lawsuit, and moved up to the position of Lieutenant Colonel in charge of field operations

within the Division of Operations.  See, Doc. 48, p. 4.  Thus, Lieutenant Colonel Adams had no

involvement in the decision on plaintiff's application for the DII position in 2007.

---

[2]The Court expresses no opinion as to the admissibility of the conclusions expressed in
the EEO report.

6

Plaintiff has not responded at all to Adams' argument.  She has not even attempted to show that there are any facts which could support a judgment against Adams.  Therefore, the motion must be granted as to defendant Adams on both claims.

**3.**      **Race discrimination claim against Nelson**

Defendant Harold Nelson argues that he is entitled to summary judgment on plaintiff's race discrimination claim because the undisputed facts show that race was not the but-for cause for his decision to give the job to Merrifield over plaintiff.

In order to prevail on this summary judgment motion, plaintiff must show that the record contains sufficient evidence of racial discrimination in the complained-of employment decision. She can do this by either the direct method or the indirect (burden-shifting) method outlined in *McDonnell Douglas Corporation v. Green*, **93 S. Ct. 1817 (1973)**.  Numerous Seventh Circuit cases have indicated that the analytical framework is the same in this regard for a  Title VII case and a case brought under 42 U.S.C. §1983.  **See,** *Egonmwan v. Cook County Sheriff's Department,* **602 F.3d 845, 849-850 (7th Cir. 2010), and cases cited therein.**

Plaintiff takes the position that she is only required to show that race was a motivating cause for the complained-of employment decision.  She is wrong.  The Supreme Court has held that the "mixed motives" analysis does not apply in a case under a federal statute unless the language of the statute so provides.  *Gross v. FBL Financial Services, Inc*., **129 S. Ct. 2343, 2352 (2009)**.  The Supreme Court explained that the "motivating factor" analysis is proper in a Title VII claim because the language of Title VII explicitly permits a claim where a discriminatory consideration was a "motivating factor."   *Id*., **at 2349.**   However, for claims brought under other federal statues which do not expressly provide for a motivating factor

analysis, plaintiff must prove but-for causation.  ***Id., at 2352.***

In ***Fairley v. Andrews***, 578 F.3d 518 (7th Cir. 2009), the Seventh Circuit held that ***Gross*** means that a plaintiff must show but-for causation in a First Amendment retaliation claim brought pursuant to 42 U.S.C. §1983.  The Seventh Circuit further held that prior decisions which required that plaintiff only show a motivating factor "do not survive ***Gross***, which holds that, unless a statute (such as the Civil Rights Act of 1991) provides otherwise, demonstrating but-for causation is part of the plaintiff's burden in all suits under federal law." ***Fairley***, 578 **F.3d at 525-526.**  The same analysis applies to suits brought pursuant to 42 U.S.C. §1981.

Plaintiff indicates in her brief that she is proceeding by way of direct evidence.  See, Doc. 54, pp. 14-16.  Under the direct method of proving discrimination, plaintiff can rely on direct or circumstantial evidence of discrimination.  ***Egonmwan v. Cook County Sheriff's Department***, **602 F.3d 845, 849-850 (7th Cir. 2010).**

Plaintiff makes no attempt to show that she can establish the elements of a prima facie reverse discrimination case under the indirect method, as described in ***Ballance v. City of Springfield***, 424 F.3d 614, 617 (7th Cir. 2005).  As such, the burden-shifting procedure of ***McDonnell Douglas*** does not come into play.  The Court notes, however, that the Seventh Circuit has questioned whether the burden-shifting analysis still applies in a non-Title VII case following the Supreme Court's decision in ***Gross***.  ***Kodish v. Oakbrook Terrace Fire Protection District***, **604 F.3d 490, 501 (7th Cir. 2010).**

According to Nelson, there is no evidence that race was the but-for reason that Nelson gave the job to Merrifield rather than to plaintiff.

Defendant filed a number of exhibits in support of the motion, including the affidavits of

8

Lance Adams, Harold Nelson and Patrick Keen.  Doc. 48, Ex. 2.  Adams stated in his affidavit
(Ex. 2, pp. 1-6)  that he was the Commander of the Area 2 Region of the Division of Internal
Investigations from September, 2002, through September, 2006.  In February, 2003, plaintiff
sent an e-mail stating that she wanted to serve on a Department of Aging task force and that she
wanted to attend a meeting of that task force in March, 2003.  E-mails were then circulated
through the chain of command indicating that she could attend the meeting but that she must do
so on her own time and make clear that she was speaking as a private citizen and not on behalf of
the ISP.  Later in March, 2003, Adams heard plaintiff on the radio and "wondered why she might
be interviewed or otherwise be appearing on the radio."  He asked Commander Jenkins to find
out.  Adams was informed that she had appeared before the Illinois Supreme Court regarding
child custody issues, and that she had made it clear that she was speaking as a private citizen.
Commander Jenkins stated that she had not done anything that was prohibited by the ISP.   Also
in 2003, Adams had recommended plaintiff for a promotion, which she did not get.  She then
requested and received a lateral transfer out of DII.  The transfer took place in January, 2004.
Adams was not involved in any employment decision regarding plaintiff after that.

Colonel Nelson's affidavit is at Doc. 48, Ex. 2, pp. 7-13.  He was the Deputy Director of
DII from 2002 through 2008.  He states that plaintiff was "disgruntled" about not being
promoted in 2003.  He had a meeting with her, during which she was "inappropriate in her
conversation and demeanor."  She mentioned the Director of the ISP "several times by his first
name as if to let us know that she was personally acquainted with him and was also somewhat
condescending."  He states that the DII Special Agent position for which plaintiff applied in
2007 would have been a lateral transfer for her.  The applicants were interviewed by a panel led

by Commander Gerald Jenkins.  Jenkins then made recommendations to Nelson.  Jenkins

recommended Trooper Pete Goodman, who was white, for one position, and Sergeant Merrifield,

who was black, for the other.  Assistant Deputy Director Patrick Keen and Nelson concurred

with the recommendations.  Nelson states that he deferred to Jenkins' recommendations because

Jenkins would be working more closely with whoever got the position, but Nelson had "no

reason to doubt his judgment."  Nelson explains that, while Weidner-Kasheimer had more

investigative experience than Goodman or Merrifield, they were "more qualified overall."

Further, Weidner-Kasheimer had previously chosen to leave DII, which indicated to him that

"she really didn't want to be in DII."  He notes that the other two members of the interview panel

favored Weidner-Kasheimer, but he felt that they did not know as much about the "exchanges"

that DII Command had with Weidner-Kasheimer in the past "which gave rise to some of our

concerns about her professionalism and judgment."  He states that he did not accept Jenkins'

recommendation "because of racial considerations or gender considerations."[3]

The affidavit of Patrick Keen is at Doc. 48, Ex. 2, pp. 14-16.  He was the Assistant

Deputy Director of DII from 2006 though 2009.  He states that he discussed all of the applicants

for the DII investigator positions with Jenkins and Nelson, and they agreed with Jenkins'

recommendations.  Keen felt that part of the reason Weidner-Kasheimer was not selected was

that she had previously asked to leave DII when she did not get promoted.  She was not seen as

eager, aggressive or cooperative.  He states that Merrifield had EEO investigative experience,

and he was already a Sergeant, so "whether he had been through the Basic Investigator course

---

[3]In her ISP EEO complaint, Wiedner-Kasheimer complained of discrimination based on race, gender and age, as well as retaliation.  See, Doc. 54, Ex. 2, p. 2.  In this case, however, she has not raised gender or age discrimination.

was a non-issue."  Keen knew that Merrifield was willing to "do what was asked of him with respect to his availability outside of normal business hours."  He states that Weidner-Kasheimer did not leave DII "with a positive attitude" and he thought that Merrifield "would be more aggressive and eager to do the job."  He states that he is white and Nelson is black, and he denies that race or gender factored into their decision.  Further, he denies that Weidner-Kasheimer's involvement in grandparents' rights had any effect, and he states that there was no discussion about those activities.

Notwithstanding the fact that plaintiff has argued the wrong standard, the Court will analyze her argument to determine whether the evidence she cites suffices under the applicable but-for causation standard.  In her response, plaintiff points to four categories of evidence: Jenkins's statements, Merrifield's lack of experience as an investigator, disregard of the views of the committee, and conflicts in Nelson's statements.

Rule 56(c)(1)(A) requires that a party must support her factual assertions by "citing to particular parts of materials in the record."  Plaintiff's brief leaves much to be desired in this regard.  The exhibits to her brief are not labeled in the CM/ECF system.  She did attach a document entitled "Table of Contents to Appendix" as Exhibit 1.  That document is of little help in identifying which document is located at a particular exhibit number because of the way the exhibits were electronically filed.  Further, the citations in her brief are to "Appendix pages," which do not, of course, correspond to the page numbers of the exhibits as electronically filed.  This has required the Court to expend an inordinate amount of time first combing through the record to locate the relevant exhibits and then scrutinizing the exhibits to locate the particular portion referenced by plaintiff.

11

The Court also notes here that plaintiff's complaint says that she applied for two DII positions in 2007, and there is evidence in the record that she applied, unsuccessfully, for a second DII position later in 2007.  See, Doc. 48, Ex. 2, p. 13; Doc. 48, Ex. 2, p. 16.  Since plaintiff's response to the motion for summary judgment does not refer in any way to her application for the second job, the Court considers that she has abandoned  any claim related to the second application.

The first category of evidence relied upon by plaintiff is Jenkins' statements that race was a consideration.  Plaintiff references several such statements.  Jenkins testified in his deposition that race was considered by "Probably the interview panel up on through the chain of command, including myself, lieutenant colonels, et cetera."  Jenkins Deposition, Doc. 54, Ex. 10,  p. 8.  Secondly, Jenkins referenced race in his recommendations memo.  On March 29, 2007, Jenkins wrote a memo to Colonel Nelson setting forth the committee's recommendations for the DII vacancies.  With regard to the two vacancies in the Collinsville office, Jenkins wrote that the committee recommended Goodman and Merrifield.  The memo gave several reasons for recommending Merrifield.  He had previous investigative experience; he was a certified instructor and had prior training in several listed areas; he had successfully served in his present position; his leadership skills had been recognized by his superiors, as evidenced by his recent promotion to Sergeant; he had interviewed well and had no prior record of untruthfulness.  Finally, Jenkins noted that "the selection of Sergeant Merrifield will serve to address the underutilization of African-American males in the Collinsville region as indicated by the Illinois State Police FY 2007 Equal Employment Opportunity Plan."  Jenkins Memo, Doc. 54, Ex. 3, p. 6.  Plaintiff also suggests that, in his statement to the ISP EEO, Jenkins said that he and Colonel

Nelson discussed race in the meeting at which they discussed the committee's recommendations. As was noted above, that is inaccurate; Jenkins' EEO statement does not say that he discussed race in that meeting with Colonel Nelson.

Next, plaintiff says that Merrifield had no absolutely no experience in investigations. Doc. 54, p. 17. She provides no citation for that assertion in the argument portion of her brief. In her statement of facts, she cited generally to Campbell's deposition testimony. Campbell testified that, as far as she recalled Merrifield had no investigative experience, Doc. 54, Ex. 5, p. 2. Plaintiff also cited to Fraser's deposition. However, Fraser did not testify that Merrifield had no investigative experience. In fact, Fraser testified that Merrifield had "some EEO investigative experience." Doc. 54, Ex. 8, pp. 11-12. Other evidence in the record, not cited by plaintiff, establishes that Merrifield had prior experience as an investigator in the ISP Office of Equal Employment Opportunity. Jenkins testified in his deposition that Merrifield had experience in EEO investigations. Doc. 54, Ex. 11, pp. 4-6. Further, Jenkins' recommendation memo to Nelson said that Merrifield had previous investigative experience. Thus, the record certainly does not establish that Merrifield had "absolutely no experience in investigations" as asserted by plaintiff.

The next fact cited by plaintiff is that the views of the committee were ignored. Again, this is not supported by any citation to the record, and, is in fact not correct. It is clear that the members of the committee disagreed, at least initially. However, the final recommendation that was submitted to Colonel Nelson in Jenkins' memo was that Merrifield be selected.

Lastly, plaintiff says that Nelson's statements have been "all over the place," which she says indicates that he is lying. Doc. 54, p. 17. She cites only two inconsistencies. First, in his

deposition, at Doc. 54, Ex. 23, p. 24, Nelson testified that Jenkins did not tell him which candidate was favored by Fraser and Campbell.  From the context of the question, it is clear that Nelson was testifying that Jenkins did not tell him at the time the decision was made in 2007.  However, in his affidavit, he said "Though two members of the panel ... recommended S/A Weidner-Kasheimer, we still did not support their decision."  Doc. 48, Ex. 2, p. 12.  Whether these two statements are in actual conflict is debatable.  Even if they are in conflict, such conflict certainly does not indicate that Merrifield's race was the but-for reason that Nelson gave him the job.  The only other conflict raised by plaintiff is that Nelson testified in his deposition that "he never had any problem" with plaintiff, but he lists a "litany of criticisms" in his affidavit. See, Doc. 54 at. P. 18.  Again, plaintiff misstates the record.  In his deposition, Nelson was asked whether he "personally" had any issues with Weidner-Kasheimer.  He testified that he did not.  He also testified that he felt that she "had issues with him."  Doc. 54, Ex. 23, p. 22.[4]  Nelson then went on to testify that he felt that Weidner-Kasheimer had behaved inappropriately during a meeting about her not having been promoted in 2003.  Ex. 23, p. 24.  So, it is not accurate to suggest that Nelson did not express any criticism of plaintiff in his deposition.  Further, Nelson was not questioned in the deposition about the relative qualifications of Weidner-Kasheimer and Merrifield, which is the context in which he criticizes her in his affidavit.

   Taken together, the evidence relied upon by plaintiff falls far short of establishing that race was the but-for reason that Nelson chose Merrifield for the job over Weidner-Kasheimer.

---

   [4]Weidner-Kasheimer's counsel also represents another plaintiff in a claim against ISP employees, including Nelson.  That case is *Hanners v. Trent, et al*, Case No. 09-311, District Court for the Central District of Illinois.  Nelson's deposition covered both cases, but only the *Hanners* caption was used.  See, Doc. 54, Ex. 23, p.1.

Plaintiff's evidence certainly suggests that *Jenkins* considered race.  However, plaintiff has not sued Jenkins; her theory is that Nelson was the decisionmaker.  Plaintiff has not made a "cat's paw" argument.  See, ***Schandelmeier-Bartels v. Chicago Park District*, 634 F.3d 372 (7th Cir. 2011)**, for a discussion of the cat's paw theory.   A cat's paw theory would not fly in this case anyway, since the evidence at most indicates that Jenkins considered race as one factor among many.  The evidence falls far short of indicating that race was the but-for cause, even for Jenkins.  In any event, it is Nelson's motivation which is relevant.  ***Davis v. Con-Way Transportation Central Express, Inc.*,  368 F.3d 776, 783 (7th Cir. 2004)**.   The evidence cited by plaintiff does not create a genuine issue as to whether Nelson considered race.  It does not come close to creating a genuine issue as to whether, but for race, Nelson would have chosen plaintiff.

**4.      Retaliation claim against Nelson**

The Seventh Circuit has endorsed a three-step analysis in a First Amendment retaliation claim.  First, it must be determined whether the employee engaged in protected speech.  Second, plaintiff must establish that her speech was a "substantial or motivating factor in the retaliatory action."  If so, the third step is that the defendant is afforded the opportunity to prove that the same action would have been taken regardless of plaintiff's speech.  ***Chaklos v. Stevens*, 560 F3d. 705, 711 (7th Cir. 2009).**

Nelson argues that plaintiff cannot show the second element in that there is no evidence that the fact that she testified before the Illinois Supreme Court in 2003 was a factor at all in his decision to choose Merrifield for the DII position in 2007.  According to Nelson, he considered not the fact or content of her testimony, but her behavior when questioned about it later.

In response, plaintiff makes a general statement that the "record is replete" with references to her having been on the radio, which is not helpful. The only specific evidence she points to is her contention that Jenkins said in his EEO statement that Nelson had said that the "radio interview ... reflected negatively on her." See, Doc. 54, p. 18. As has already been explained, this is an inaccurate characterization of Jenkins' statement. Jenkins actually said that "Colonel Nelson previously had interactions with Special Agent Weidner-Kasheimer regarding her not being submitted for promotion and the radio interview, and her behavior at these interactions reflected negatively on her." Doc. 54, Ex. 2, pp. 10-11.

Plaintiff then observes that "this" (i.e., her selective quotation from Jenkins' statement) is "consistent with Campbell's testimony about the radio interview." Doc. 54, p. 19. The Court has undertaken a gratuitous review of Campbell's deposition (Doc. 54, Ex. 4-6) in an effort to ascertain what she testified to regarding "the radio interview."[5] Campbell testified that she had no personal knowledge about the radio interview, but she had gathered from "bits and pieces much after the fact" that plaintiff was on a radio show on her own time, and that she became upset when Lieutenant Fraser questioned her about it later. Campbell had also heard that a subsequent meeting was held, and "that didn't go well." Doc. 54, Ex. 5, p. 4. Laying aside the obvious problem with the admissibility of this evidence, Campbell's testimony in no way supports plaintiff. If anything, it supports Nelson's position that he was concerned not by the fact or content of plaintiff's testimony, but by her behavior later.

### Conclusion

---

[5]"Interview" is a misnomer here. All parties agree that plaintiff was not, in fact, interviewed on a radio program.

For the foregoing reasons, defendant's Motion for Summary Judgment **(Doc. 47)** is **GRANTED**.

The Clerk of Court is directed to enter judgment in favor of defendants **HAROLD NELSON** and **LANCE ADAMS**.

**IT IS SO ORDERED.**

**DATE:  September 2, 2011.**


**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**

17